Sterno, Inc. (Formerly S. Sternau & Co., Inc.) v. Commissioner.
Sterno, Inc. v. Commissioner
Docket No. 66661.
United States Tax Court
T.C. Memo 1959-241; 1959 Tax Ct. Memo LEXIS 7; 18 T.C.M. (CCH) 1149; T.C.M. (RIA) 590241; December 30, 1959
*7 Karl W. Windhorse, Esq., 125 Park Avenue, New York, N. Y., for the petitioner. Victor H. Frank, Jr., Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income and excess profits tax against the petitioner for the taxable year 1951 in the amount of $12,570.66. The issue is whether the amount paid by petitioner as commissions to a related sales company represented reasonable compensation for the services rendered. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioner is a New York corporation, with its principal office in New York City. It filed its income and excess profits tax returns for 1951 with the director of internal revenue for the third district of New York. It keeps its books of account and files its returns on an accrual method of accounting. Petitioner was organized in April 1916. It and the Sterno Sales Corporation, hereafter referred to as Sales Corporation, are the wholly-owned subsidiaries of the Sterno Corporation, a holding company, hereafter referred to as the parent corporation. Sales Corporation was incorporated in *8 April 1926, under the laws of Delaware. The parent corporation was organized in June 1920, under the laws of Maryland. Since its organization, petitioner has been engaged in the marketing and distributing of "Sterno" canned heat and related products, and according to its letterhead in use during the taxable year, it is a manufacturer of canned heat cooking fuel, Sterno appliances and other Sterno specialties. Sterno canned heat is a solidified alcohol fuel used where a portable fuel is desired either indoors or outdoors. Sterno appliances are the vehicles in which the fuel is used. Appliances such as picnic and camp stoves are sold to drug stores, hardware stores, and other retail outlets. Other appliances, such as chafing dishes, hot plates, steam tables, roll warmers, and other industrial products, are sold to hotels, clubs, restaurants, and catering plants. It is stipulated that "Sterno Sales Corporation since its incorporation in 1926 has at all times acted as a sales representative for" petitioner. During 1951, Sales Corporation employed from six to eight salesmen. These salesmen traveled with samples, visiting individual customers. For their services, they were paid a *9 base salary and commissions on sales made, plus expenses for meals, hotel rooms and transportation. According to the 1951 income tax return filed by Sales Corporation, it incurred during that year $63,418.99 as "Salaries and wages," $33,604.01 for salesmen's traveling expenses, $45 as bad debts, $2,430.34 for taxes, such as payroll, New York City gross receipts, Delaware and New York franchise and California income tax, and $609.12 for general and legal expenses. Orders for Sterno products were taken on stationery bearing the name of Sales Corporation, and when so taken, were mailed directly to petitioner, thereby completing all work done by Sales Corporation. The orders were taken subject to acceptance by petitioner, with petitioner performing all other work relating to the sales, including the checking of the credit of the prospective purchasers and the preparing of the shipping and billing orders. Sales Corporation had no office separate and apart from that of petitioner and, in so far as appears, no employees other than salesmen. It employed no clerks, and any and all accounting records kept for it or in its name were kept by petitioner's bookkeeping department. Its office *10 costs, if any, were borne by petitioner. Sterno products were promoted solely by petitioner, which undertook all of the advertising and maintained the only display room and warehouse. Sales Corporation's stationery was used to write to the salesmen, but not for letters to customers. Salesmen employed by Sales Corporation attended exhibits in hotel and restaurant shows at the expense of petitioner. During 1951, the same individuals held the following offices in both petitioner and Sales Corporation, although the only salaries received by them were paid entirely by petitioner: Benjamin F. Natkins
President
A. D. Leidesdorf
Vice President
S. D. Leidesdorf
Treasurer
J. Fraser
Secretary
E. Deutschmann
Assistant Secretary
In its income tax return for 1951, petitioner deducted $113,765.31 for officers' salaries, rent, and advertising. Sales Corporation had no activities except as they related to petitioner's business, and no income other than that received from petitioner. From 1935 and prior thereto, petitioner paid Sales Corporation a commission of 12 1/2 per cent of its sales, plus the salaries and expenses of "specialty" salesmen. The "specialty" salesmen *11 were employed to develop or create users of Sterno products among the consumer public. They would visit retail stores, including drug stores and hardware stores, in this promotion work, in the course of which they would gather small orders for items in the Sterno line of products. They would not send these orders in to petitioner, but would turn them over to the local jobber who sold the Sterno line to the retail stores. The sales to these jobbers would be made by the regular salesmen of Sales Corporation, and it was on these sales that the commission of 12 1/2 per cent was paid. It was only for the year 1935 that this agreement was reduced to writing. For 1936, a new and different written agreement was executed. Under the new agreement, it was provided that petitioner would pay Sales Corporation as commissions an amount equal to all expenses of Sales Corporation incurred during the year. It was also recited that petitioner had performed certain administrative services for Sales Corporation, in consideration of which Sales Corporation had agreed to pay certain executive salaries and accounting expenses of petitioner. In that connection, it was agreed that petitioner would discharge *12 and release Sales Corporation from any liability to pay such salaries and expenses of petitioner during 1936. When the 1936 contract became effective, the use of "specialty" salesmen was discontinued and only the regular salesmen were used. Thereafter special emphasis was placed on the making of sales to customers who would be quantity users of Sterno products, such as hotels, restaurants and clubs. Although the parties continued to operate under the terms of the 1936 contract, there was no further written contract until December 1951, when on December 18, I. Schur, as Assistant Treasurer, executed the acceptance for Sales Corporation of a contract bearing date of December 17, 1951. Under the new contract, petitioner was to reimburse Sales Corporation for all of its operating expenses and to pay a further sum equal to 1 1/2 per cent of sales. The contract was to apply to all sales made by Sales Corporation during the calendar year 1951, and it was recited that it was "to confirm our oral agreement as at January 1st, 1951." There had, in fact, been no prior oral agreement. [1]
*13 In its income tax return for 1951, petitioner reported gross sales of $1,464,789.03, less returns and allowances of $27,689.96, or a net amount of $1,437,099.07. It is stipulated that "of the total reported gross sales, $1,406,457.07 was sold by Sterno Sales Corporation and $30,642 was sold by R. K. Batchelder." R. K. Batchelder was an independent sales agent who handled a limited line of products which he sold to railroad and trucking companies transporting perishable goods. The products he sold were principally insulation material and charcoal heaters used in refrigerator cars to prevent the perishable goods from freezing in subzero weather. The only Sterno product he handled was Sterno fuel, which was sold as an igniter for the charcoal heater. During 1951, petitioner paid Batchelder, pursuant to an oral agreement, a commission of 7 1/2 per cent on all sales of Sterno fuel made by him. The rate of commission in years prior to 1951 had been 10 per cent. In 1951, Sterno of Canada, a third whollyowned subsidiary of the parent corporation, marketed and distributed the entire line of Sterno products in Canada in the same manner as did petitioner in the United States. Benjamin F. *14 Natkins was also president of Sterno of Canada. [2] From the incorporation of Sterno of Canada, in 1920, Harold F. Ritchie & Company, Ltd., of Toronto, Canada, hereafter referred to as Ritchie & Company, acted as its sales agent. Ritchie & Company was wholly unrelated to any of the Sterno companies. Sterno products was only one of the products handled and sold by it. For 1951, the rate of commission paid to Ritchie & Company was 11 per cent on the American price plus 2 1/2 per cent on the Canadian selling price for handling. The Canadian price in substance was the American selling price plus the cost of freight and duty required to be paid upon goods brought into Canada. Canadian sales were about 6 per cent of the total Sterno sales in the United States. It is stipulated that for 1951 "petitioner incurred commissions of $120,515.95 to Sterno Sales Corporation and $2,298.15 to R. K. Batchelder with respect to sales made by each of *15 them during 1951." On January 1, 1951, petitioner was indebted to Sales Corporation in the amount of $7,219.02. During 1951 it made payments totaling $106,595.24 to Sales Corporation. On December 31, 1951, it was charged with $120,515.95, representing commissions due Sales Corporation. After this charge was entered on its books, petitioner was indebted to Sales Corporation in the amount of $21,139.73. In his determination of deficiency herein, the respondent determined that of the commissions of $120,515.95 paid to Sales Corporation for the year 1951, $20,408.49 was unreasonable and excessive, and disallowed that amount. In its income tax return for 1951, Sales Corporation reported net income of $20,408.49. Opinion Under the writing of December 17, 1951, the petitioner incurred commissions of $120,515.95 to Sales Corporation for the calendar year 1951. Respondent has determined that $100,107.46 of that amount represented reasonable compensation within the meaning of section 23(a)(1)(A) of the Internal Revenue Code of 1939; [3] that the remaining $20,408.49 so incurred was unreasonable and excessive, and, under the section mentioned, does not constitute an allowable deduction. *16 It is the position of the petitioner that it and Sales Corporation are two separate and distinct corporate entities; that the amount incurred as commissions was incurred pursuant to a valid contract; and that the expenses of Sales Corporation, plus 1 1/2 per cent of sales, represented a legal obligation to Sales Corporation as compensation for services rendered, and as compensation, was an allowable deduction to petitioner in arriving at its net income. That the purpose of a duly organized business corporation is, generally speaking, the making or earning of profits may be regarded as an accepted fact. That is not to say, however, that profits do or must result from the corporate activities, even though the purpose of the activities is the earning of profits. And by *17 the same token, whether compensation paid for services is or is not reasonable in amount, for the purposes of section 23(a)(1)(A), is not resolved or controlled by the presence or absence of profit to the recipient of the compensation. The compensation must be shown to have been reasonable in amount when related to the services which were actually rendered. The respondent has determined that $20,408.49 of the commissions paid to Sales Corporation was unreasonable and excessive, and the burden is on the petitioner to show that this determination was in error. It is our opinion and we hold that it has not carried that burden. According to the income tax return of Sales Corporation, its total capital was $250. It had no assets beyond comparatively small sums of cash and whatever balances were shown as being due from petitioner. It had no office equipment and, in so far as is shown, its possessions other than letterheads and order blanks consisted of books of account, which were kept and maintained by petitioner. It had a duly stated list of officers, but there is no showing that they rendered other than perfunctory services for Sales Corporation, and to the extent they may have rendered *18 any services for Sales Corporation, they apparently were not such as to call for the payment of any compensation. According to Natkins, president of both petitioner and Sales Corporation, there was a sales manager, but there is no indication that he worked for or was employed by Sales Corporation, or that his services as sales manager were substantial. Natkins in his testimony referred to him as his sales manager. We know only that Sales Corporation did carry as its employees six to eight salesmen who were engaged in taking sales orders for petitioner, but there is no proof which shows that they answered to anyone even nominally representing Sales Corporation. Rather, the proof tends to show that they answered and were responsible to petitioner, more particularly to Natkins in his capacity as petitioner's president and manager. We are unable to say that the services rendered for petitioner by or in the name of Sales Corporation were anything more than the services of the salesmen themselves or were reasonably worth more than the salary, commissions and expenses received by them. Both parties have discussed and sought support by reference to the commissions paid to Batchelder and *19 to Ritchie & Company. Batchelder on the sales made by him received a commission of 7 1/2 per cent, as compared with 8.6 per cent being the percentage of total sales represented by the total payments received by Sales Corporation. Ritchie & Company, who sold Sterno products in Canada, received a commission of 11 per cent on the American price for the products, plus 2 1/2 per cent on the Canadian selling price for handling. Both Batchelder and Ritchie & Company were independent contractors. They had no arrangement, as did Sales Corporation, whereby petitioner, in addition to supplying their requirements for office space and rendering other services, would pay the total costs of their efforts in selling Sterno products and a profit certain. Ritchie & Company and Batchelder were, so to speak, wholly on their own. Batchelder's sales were to a limited group served by him in other respects and he sold only one item from the Sterno line. Ritchie & Company undoubtedly supervised, directed and controlled the activities of its salesmen and covered its own costs. Furthermore, taking into account the differences between the United States and Canada in population and the geographical distribution *20 thereof, in industrial development and in the possible and probable variances in the number of customers who would be volume purchasers, there is no basis for saying on the proof at hand that the commissions paid to Ritchie & Company are in any way indicative of what would be reasonable as compensation to Sales Corporation on the sales made in the United States by its six to eight salesmen during the year 1951. The proof being as it is, we are unable to say that the amount allowed by the respondent as reasonable compensation for the services rendered did not fully represent all the services rendered were reasonably worth. Decision will be entered for the respondent. Footnotes
1. It was the testimony of Natkins, who was president of both petitioner and Sales Corporation, that to him it didn't make any sense for a corporate entity not to make a profit, that he wasn't in a position to do anything about it until he became president of petitioner in April of 1951, that he decided 1 1/2 per cent of sales would be a reasonable amount of profit for Sales Corporation but that he said nothing about it to anyone, not excepting petitioner's officers, until the writing dated December 17, 1951, was drawn up and on December 18 sent to the office of I. Schur for execution of acceptance for Sales Corporation.↩
2. Apparently Sterno of Canada shared petitioner's New York office, although the record does not state clearly whether Sterno of Canada maintained any other offices. For the year 1951 it was charged by petitioner for rent in the amount of $5,660.96.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩